UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN IVY, CDCR #AG-0930,<br><br>                                    Plaintiff,<br><br>vs.<br><br>P. WINGO, Correctional Officer; K. COTTRELL, Correctional Hearing Lt.; S. ANDERSON, Chief Disciplinary Officer; M. POLLARD, Warden,<br><br>                                    Defendants. | Case No.: 3:20-cv-01345-CAB-AHG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

Plaintiff John Ivy, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Ivy claims several RJD officials violated his First, Eighth, and Fourteenth Amendment rights after a contraband phone was discovered in his cell on June 26, 2019. *See* Compl., ECF No. 1 at 3–7. Ivy alleges Defendants conspired and retaliated against him and violated his right to due process by employing "illegal policy procedures" during the disciplinary proceedings that followed discovery of the contraband phone. *Id.* He

seeks declaratory relief, general and punitive damages according to proof, and demands a jury trial. *Id.* at 8.

Ivy has not paid the filing fees required by 28 U.S.C. § 1914(a), but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2.

## I.     IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S.  __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Ivy has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at CEN. *See* ECF No. 2 at 4–7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show he carried an average monthly balance of $251.39, maintained $213.25 in average monthly deposits to his trust account for the 6-months preceding the filing of this action, but due to several pre-filing sales expenditures, had an available balance of only $.01 to his credit at the time of filing. *See* ECF No. 2 at 4, 6.

Therefore, the Court **GRANTS** Ivy's Motion to Proceed IFP (ECF No. 2) and assesses his initial partial filing fee to be $50.27 pursuant to 28 U.S.C. § 1915(b)(1). However, the Court will direct the Secretary of the CDCR, or his designee, to collect this initial filing fee *only if sufficient funds are available in Ivy's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

///
///
///

**II.     Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.     Standard of Review

Because Ivy is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 570 (2007)); *Wilhelm*, 680 F.3d at 1121.

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted.[2]

---

[2] The Court is not, however, required to "to wade through exhibits to determine whether cognizable claims have been stated," when it screens a complaint pursuant to 28 U.S.C.

4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

B.    Plaintiff's Allegations

On June 26, 2019, Ivy claims Defendant Wingo and Correctional Officer Guzman[3] conducted a random search of RJD Housing Unit 5, Cell 5-212, which he shared with an inmate named Baker. *See* Compl. at 4 & Pl.'s Ex. A at 19 ("RVR Log. No. RJD-6871236.") Both Ivy and Baker submitted to clothed body searches which revealed no contraband, and both were instructed to sit in the dayroom while the cell search was conducted. *Id.* Ivy contends Wingo "claim[ed]" to have found a black LG cell phone on the left side of the toilet behind a cleaning sponge. *Id.* Wingo secured the phone in his left lower cargo pocket, maintained custody of the phone until he "took (1) photo and placed it in Central Control Evidence locker #4." *Id.*

On July 7, 2019, Ivy was served with a copy of RVR Log. No. RJD-6871236, charging him with constructive possession of a cellular phone in violation of Cal. Code Regs., tit. 15 § 3006(a). *See* Ex. A at 14. On August 6, 2019, Ivy appeared at a disciplinary hearing before Defendant Cottrell, a Correctional Lieutenant, who served as the Senior Hearing Officer ("SHO"). *See* Compl. at 5–6; Ex. A at 14, 22. Officer Wingo, the "Reporting Employee," appeared as witness. *See* Compl. at 5; Ex. A at 17, Ex. B ("Third Level Appeal Decision, TLR Case No. 1913514, Log No. RJD-19-05107") at 44.

At the hearing, Ivy highlighted Wingo's failure to "photograph the cell phone where [he] found it," noted the absence of a record of the cell search in the daily

---

§ 1915(e) and § 1915A. *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015).

[3] Guzman is not named as a Defendant.

"Housing Unit Log," and questioned Wingo's failure to issue a cell search receipt. *Id.* at 5; Ex. A at 17–18. Ivy pleaded not guilty, claimed the "RVR documented did not happen," and asked that several CDCR Form 22s he submitted between June 27, 2019 and August 6, 2019—all requesting to review the "log book and cell search log" be considered as evidence in his defense. *Id.* at 5–6; Ex. A at 18–19, Ex. C at 29–39. Ivy also requested an investigative employee ("IE") and asked that an additional statement "alleging misconduct against the SHO (Lt. K. Cottrell)" be included in the RVR hearing notes. *Id.*, Ex. A at 19.

      SHO Cottrell granted Ivy's request to include copies of his CDCR Form 22's as part to the hearing record, but denied his demand for an IE as unwarranted. *Id.* Cottrell further rejected Ivy's request to have Officers Castillo, Gutierrez, and Pulido[4] appear personally at the hearing as unnecessary in lieu of their submitted stipulations confirming "there was nothing filled out in the Housing Unit Log book about cell searches conducted on the date of th[e] incident." *See* Ex. A at 17-19; *see also* Pl.'s Ex. D at 44–45. Cottrell then considered Ivy's and Wingo's testimony, Wingo's written report, photo evidence of the cellular phone, as well as Castillo, Gutierrez, and Pulido's stipulations, and determined that "when taken together the facts me[t] and exceed[ed] the preponderance of the evidence threshold" to support a finding of guilt. *See* Compl. at 5–6; Ex. A at 20, 22; Ex. D at 44–45. The RVR hearing results further indicate Cottrell was able to "find and produce a Daily Activity Report (DAR) for Facility A dated 6/26/19, indicating a cell search for A5-212 was conducted and positive for a contraband cell phone," but this "did not weigh on [his] finding" because it was not provided to Ivy prior to the hearing. *See* Ex. A at 19.

---

[4] Ivy does not name Officers Castillo, Gutierrez, or Pulido as Defendants either. He also offers no explanation as to why he requested these officers' presence at his disciplinary hearing, and includes no factual allegations describing Castillo, Gutierrez, or Pulido's role or responsibilities with respect to Wingo and Guzman's June 26, 2019 cell search.

As a result of Cottrell's disciplinary findings, Ivy was assessed a 90-day credit loss, assigned to "Privilege Group C" for 90 days, and denied "package privileges" for 90 days. *Id.* at 22–23. He appealed the guilt determination via CDCR 602 Inmate/Parolee Appeal Log No. RJD-19-05107, but RVR Log. No. RJD-6871236's Disciplinary Hearing Results were upheld in a Third Level Appeal Decision dated January 14, 2020. *See* Ex. D at 44–45.

Ivy now alleges Wingo and Cottrell retaliated and "conspired a plot of conspiracy" against him by failing to follow "proper evidence procedures" related to the June 26, 2019 cell search, and denied him due process by relying on "false and misleading evidence." *See* Compl. at 5–7. He further contends Defendants S. Anderson, the Chief Disciplinary Officer who confirmed Cottrell's disciplinary findings on August 8, 2019, *see* Ex. A at 23–24, and RJD's Warden Pollard are also "liable for the Due Process Violation" because while they were "not directly involved," they failed to correct Wingo and Cottrell's errors via his administrative appeal "in the course of [their] supervisory responsibilities." *Id.* at 6, 7.

### C.  42 U.S.C. § 1983

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012); *see also Rawson v. Recovery Innovations, Inc.*, No. 19-35520, __ F.3d __, 2020 WL 5405684, at *3 (9th Cir. Sept. 9, 2020) ("Pursuant to § 1983, a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law.").

### D.  Retaliation & Conspiracy

As an initial matter, the Court finds Ivy's broad and factually unsupported claims of having been victim of conspiracy "plot" and "hidden retaliation" with respect to his disciplinary conviction clearly fail to state a plausible claim for relief against any Defendant. *See Iqbal*, 556 U.S. at 678.

To state a claim for conspiracy under section 1983, Ivy must allege facts sufficient to show the existence of an agreement or meeting of the minds to violate his constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quotation and citation omitted). To be held liable, each participant in the conspiracy need not be alleged to "know the exact details of the plan, but each participant must [be alleged to] at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (citation and quotations omitted). Additionally, Ivy must allege that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974). Ivy claims broadly that he "believe[s] that officer P. Wingo and Lieutenant K. Cottrell conspired a plot of conspiracy," by subjecting him to "illegal policy procedures" with respect to his disciplinary conviction. *See* Compl. at 5, 7. He does not, however, include any "further factual enhancement" to plausibly show Wingo and Cottrell agreed to deprive him of due process; nor does Ivy identify any joint and overt act in furtherance of a common objective to further that goal. *See Twombly*, 550 U.S. at 557; *Avalos*, 596 F.3d at 592; *Franklin*, 312 F.3d at 441. "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim." *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

Ivy's retaliation claims fare no better. He contends Defendants' actions were retaliatory, *see* Compl. at 3–4, but he provides no factual support for this legal conclusion whatsoever. *Id.* at 4; *see also Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."). A pleading like Ivy's, offering only

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" does not "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570).

### E. Fourteenth Amendment Due Process Claims

The gravamen of Ivy's Complaint centers on his allegations of having been denied due process with respect to the issuance of RVR Log No. No. RJD-6871236 and the disciplinary proceedings that followed. *See* Compl. at 7. Specifically, Ivy claims Officer Wingo "went against the written policy and procedures" with respect to ensuring a proper "chain of custody" for the confiscated phone, and that SHO Cottrell relied on this "tainted" evidence in order to deprive him of a "legal and fair" disciplinary hearing. *Id.* at 5–6. As a result, Ivy claims he was found guilty based on an RVR that "did not happen," and suffered "administrative sanctions" including 90 days of credit loss, Privilege Group C, and package privileges. *Id.* at 7 & Ex. A at 18–19.

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary

action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Insofar as Ivy claims Wingo's June 26, 2019 cell search, which formed the basis of the disciplinary offense charged against him via RVR Log No. RJD-6871236, simply "did not happen," *see* Compl., Ex. A at 19, to the extent he faults Wingo for failing to follow "written policy and procedures of the chain of custody," *id.* at 5,[5] and to the extent he challenges the sufficiency of the evidence SHO Cottrell considered before finding him guilty, his allegations fail to state a plausible due process claim. *Iqbal*, 556 U.S. at 678.

---

[5] Allegations that prison officials simply failed to follow "state departmental regulations do not establish a federal constitutional violation." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009); *see also Parnell v. Martinez*, __ Fed. App'x __, No. 19-16393, 2020 WL 5544081, at *1 (9th Cir. Sept. 16, 2020).

1      First, "[t]he issuance of a false RVR, alone, does not state a claim under section
2  1983." *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) (citing *Dawson v.*
3  *Beard*, 2016 WL 1137029, at *5-6 (E.D. Cal. 2016)). Instead, claims of arbitrary action
4  by prison officials must grounded in "'the procedural due process requirements as set
5  forth in *Wolff v. McDonnell*.'" *Murschel*, 2018 WL 539159, at *5 (citing *Ellis v. Foulk*,
6  2014 WL 4676530, at *2 (E.D. Cal. 2014) (quoting *Hanrahan v. Lane*, 747 F.2d 1137,
7  1140 (7th Cir. 1984))). "[T]here is no due process right to be free from false disciplinary
8  charges," *Solomon v. Meyer*, 2014 WL 294576, at *2 (N.D. Cal. 2014), because "[t]he
9  Constitution demands due process, not error-free decision-making." *Chavira v. Rankin*,
10 2012 WL 5914913, at *1 (N.D. Cal. 2012); *see also Johnson v. Felker*, 2013 WL
11 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to
12 be free from false accusations of misconduct, so the mere falsification of a [rules
13 violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v.*
14 *Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v. Rideout*, 808 F.2d 949, 951-
15 53 (2d Cir. 1986)).

16     Second, Ivy's due process claims require sua sponte dismissal pursuant to 28
17 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) because he fails to allege facts
18 sufficient to show that the deprivations he suffered as a result of his disciplinary
19 conviction, *i.e.*, 90 days of lost good time credit, privilege group, and package privileges,
20 *see* Compl. at 7, Ex. A at 20–21, imposed the type of "atypical and significant hardships"
21 required by *Sandin* to invoke liberty interests entitled to *Wolff's* procedural safeguards.
22 *Sandin,* 515 U.S. at 484; *see e.g., Salinas v. Montgomery*, No. 3:19-cv-0744-AJB-RBB,
23 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (finding allegations that inmate was
24 "assessed a good-time credit loss of 90 days" insufficient to show atypical and significant
25 hardship); Cal. Code Regs., tit. 15 § 3044(f)(2) (explaining "Privilege Group C"
26 "privileges and non-privileges"); *Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal.
27 2016) (concluding that time-limited "C-status deprivations" did not constitute hardship
28 that is "atypical and significant 'in relation to the ordinary incidents of prison life.'")

(quoting *Sandin,* 515 U.S. at 484), *report and recommendation adopted,* 2016 WL 524438 (S.D. Cal. 2016); *Randle v. Melendrez*, 2017 WL 1197864, at *4 (C.D. Cal. 2017) (finding "four months in administrative segregation as a result of the false RVR," during which plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property" insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status"); *Wyatt v. Swearingen*, 2010 WL 135322, at *8-9 (N.D. Cal. 2010) (no liberty interest in prisoner's year-long C-status placement); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, at *1 (E.D. Cal. 2010) (no liberty interest in delayed release from C-status); *see also Atherley v. Kernan*, No. 3:19-CV-02355-LAB-KSC, 2020 WL 2079374, at *11 (S.D. Cal. Apr. 29, 2020) (dismissing prisoner's claims of having been placed in "Privilege Group C" and 90-day loss of canteen, phone, day room, and package privileges sua sponte for failing to state a due process claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)).

Third, even if Ivy had alleged facts sufficient to plausibly show he suffered an "atypical or significant hardship" with respect to the charges filed against him via RVR Log No. RJD-6871236, the August 6, 2019 disciplinary hearing results, attached as Exhibit A to Ivy's Complaint, reveal SHO Cottrell's findings were nevertheless supported by "some evidence." *See* Compl., Ex. A at 14–24; *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) ("[T]he requirements of due process are satisfied if some evidence supports the [disciplinary] decision.... "); *Parnell v. Martinez*, No. 19-16393, 2020 WL 5544081, at *1 (9th Cir. Sept. 16, 2020) (same).

F.   Personal Liability – Defendants Anderson & Pollard

Ivy also claims Chief Disciplinary Officer S. Anderson and Warden M. Pollard are "liable for the due process violation by reason of [their] failure to correct" Wingo and Cottrell's errors via CDCR 602 Inmate/Parolee Appeal Log No. RJD-19-05107. *See* Compl. at 6 & Ex. D at 44–45. Ivy contends that while neither of these Defendants

"commit[ted] the due process violation" themselves, each "became responsible" as supervisors when they "failed to correct it." *Id.*

But simply "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" *Ellington v. Clark*, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). And a prison official's allegedly improper processing of grievances or appeals, without more, does not provide an independent basis for section 1983 liability. *See Ramirez*, 334 F.3d at 860 (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Davis v. Penzone*, 2017 WL 8792541, at *5 (D. Ariz. July 25, 2017) (prison administrators and other supervisors are not per se liable for an alleged violation of a prisoner's federal constitutional rights simply by failing to grant his "grievances or grievance appeals."). Thus, because Ivy alleges Defendants Anderson and Pollard's only involvement was their failure to intervene or correct Wingo and Cottrell's alleged due process violations, he fails to state a claim against them as well. *See* 28 U.S.C. § 1915(e)(2); § 1915A(b); *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Moreno v. Ryan*, 2017 WL 2214703, at *3 (D. Ariz. May 19, 2017) (failure to intervene on the prisoner's behalf to remedy the allegedly unconstitutional underlying behavior does not by itself amount to an independent or freestanding constitutional violation for purposes of § 1983); *Morgan v. Borders*, 2018 WL 2213455, at *6 (C.D. Cal. May 14, 2018) (dismissing allegations that inmate appeals officials "allowed transgender discrimination to continue ... unabated" when they denied plaintiff's grievance alleging discrimination as insufficient to state a viable § 1983 claim).

    G.    <u>Eighth Amendment – Cruel and Unusual Punishment</u>

Ivy also invokes the Eighth Amendment with respect to his disciplinary hearing and punishment. *See* Compl. at 3, 7. "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the

Eighth Amendment." *Watison*, 668 F.3d at 1112 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[A]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted).

To state a cruel and unusual punishment claim, Ivy must allege facts sufficient to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S. at 678. First, he must allege his deprivation was "objectively [and] 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298-300; *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (citation omitted).

Second, Ivy's Complaint "must contain sufficient factual matter" to demonstrate that each Defendant acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744 F.3d at 1091. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Ivy invokes the Eighth Amendment's proscription of cruel and unusual punishment with respect to RVR Log No. RJD-6871236 and the disciplinary conviction imposed as a result of his having been found guilty of possessing the contraband cell phone Officer Wingo claimed to have discovered in his cell. *See* Compl., ECF No. 1 at 7-8. But he does not claim that the temporary limitations placed on his group and package privileges as a result of this disciplinary conviction deprived him of any "basic human need," and he

/ / /

does not and cannot plausibly allege that the loss of behavioral custody credits deprived him of "life's necessities." *See Rhodes*, 452 U.S. at 347.

Thus, while Ivy describes Defendants' actions as "cruel and unusual punishment," Compl. at 7, this amounts to a mere "[t]hreadbare recital[] of the elements of a[n] [Eighth Amendment] cause of action, supported by merely conclusory statements, [and] do[es] not suffice." *Iqbal*, 556 U.S. at 678; *see also Cruz-Tercero v. Banks*, 2012 WL 3155552, at *6 (C.D. Cal. May 29, 2012), *report and recommendation adopted,* 2012 WL 3155528 (C.D. Cal. Aug. 2, 2012); *Cole v. Sisto*, 2010 WL 2303257, at *2 (E.D. Cal. June 7, 2010) ("To the extent that [plaintiff] argues that the particular forms of discipline imposed on him ... (the forfeiture of time credits, the adding of points to his classification score, or the temporary loss of certain yard and canteen privileges) was so harsh as to be cruel and unusual, such a claim is plainly frivolous."); *Galindo v. Cockrell*, 2001 WL 1057982, at *4 (N.D. Tex., Aug. 31, 2001) ("Galindo's claim that the revocation of his earlier earned credits constitutes cruel and unusual punishment in violation of the Eighth Amendment is frivolous and requires no discussion.").

H. *Heck* Bar

Finally, the Court cautions Ivy that even if he can allege additional facts sufficient to plausibly show Defendants Wingo and Cottrell violated his due process rights with respect to his RVR and disciplinary conviction, his claims, as they are currently pleaded, suggest he faces yet another procedural hurdle.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under ... 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (internal citation omitted). A prisoner's claims are within the core of habeas corpus if they challenge the fact or

/ / /

duration of his conviction or sentence. *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016) (en banc); *Ramirez*, 334 F.3d at 858.

In *Heck v. Humphrey*, the United States Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 486-87. Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* requires the plaintiff in a § 1983 action "first … to prove that his conviction had been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 486). "This favorable-termination requirement, the Court explained, applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* (quoting *Heck*, 512 U.S. at 487).

*Heck*'s bar applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002), and if the restoration of those credits "necessarily" would "affect the duration of time to be served." *Muhammed*, 540 U.S. at 754; *see also Nettles*, 830 F.3d at 929 n.4 ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.' " (citations omitted)); *Ramirez*, 334 F.3d at 856 ("[T]he applicability of [*Heck*'s] favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.").

Here, a judgment in Ivy's favor would necessarily imply the invalidity of his disciplinary conviction and his subsequent credit loss to the extent he contends the RVR

"did not happen," *see* Compl. Ex. A at 18, and claims Officer Wingo and SHO Cottrell conspired to charge and find him guilty based on "tainted evidence," and intentionally "misleading" testimony that "never documented any legal cell search." *Id.* at 6, 7. *See Edwards*, 520 U.S. at 648 (finding prisoner's claims for declaratory relief and money damages "based on allegations of deceit and bias on the part of the decisionmaker … necessarily imply the invalidity of the punishment imposed, [and are] not cognizable under § 1983."). "The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Id.* at 647; *see also Luster v. Amezcua*, 2019 WL 1442992, at *7-8 (E.D. Cal. Apr. 1, 2019) (finding prisoner's § 1983 claims barred by *Heck* to the extent they were based on allegations that prison officials "made a false report against her.").

Therefore, should Ivy chose to proceed by amending his complaint, he must not only address the Fourteenth Amendment pleading deficiencies identified above, but also allege that the disciplinary conviction which serves as the basis of this § 1983 suit has already been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

### III. Conclusion

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $50.27 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE

CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b); and

5. **GRANTS** Plaintiff 45 days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted, if he can. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  September 24, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge